**FILED**

**April 28, 2017**

**IN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 11:07AM**



### TENNESSE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | | |
|---|---|---|
| Steven Gordon, | ) | Docket No.: 2016-01-0587 |
| Employee, | ) | |
| v. | ) | |
| Jake Marshall, LLC, | ) | State File No.: 13084-2016 |
| Employer, | ) | |
| And | ) | |
| The Phoenix Insurance Company. | ) | Judge Audrey A. Headrick |
| | ) | |

## EXPEDITED HEARING ORDER

This matter came before the undersigned workers' compensation judge on April 10, 2017, on the Request for Expedited Hearing filed by Steven Gordon. The present focus of this case is whether Mr. Gordon is entitled to medical and temporary disability benefits for his alleged vision, dental, and mental injuries. The central legal issue is whether Mr. Gordon is likely to establish at a hearing on the merits that Jake Marshall, LLC must provide medical treatment and temporary disability benefits for those issues. For the reasons set forth below, the Court holds Mr. Gordon is not entitled to the requested benefits at this time.

### History of Claim

Mr. Gordon, a sheet metal laborer, alleged he sustained vision, dental, and mental injuries due to striking his head on a metal beam on February 16, 2016, while working for Jake Marshall. He wore a hardhat at the time of the incident. It is undisputed that Mr. Gordon sustained a compensable head injury and related neck pain. However, Jake Marshall disputes that it is responsible for any unauthorized medical treatment Mr. Gordon sought on his own or that it owes Mr. Gordon any temporary disability benefits.

Jake Marshall provided Mr. Gordon with authorized medical treatment at Erlanger Hospital. However, the parties did not submit any medical records from Erlanger. Jake Marshall later provided Mr. Gordon with a panel of physicians from which he selected Nova Medical Center. Mr. Gordon saw Dr. Daniel Callan at Nova Medical Center a

1

week after his injury. Dr. Callan's records indicate Erlanger treated Mr. Gordon for a mild concussion and whiplash. Mr. Gordon complained that he "may have chipped a crown," had blurry and double vision, occasional dizziness, numbness in his arms and legs on occasion, and sometimes experienced shooting pains in his neck and down his arms. Dr. Callan diagnosed Mr. Gordon with a cervical spine strain, muscle spasms of his back, and a concussion without loss of consciousness. He referred Mr. Gordon for physical therapy, prescribed medication, and provided him with work restrictions.

Two days later, Mr. Gordon drove to Atlanta to see his sister. On the way to Atlanta, Mr. Gordon allegedly became paranoid that people were following him and that "the employees and doctors that gave him pain medicine were out to get him." (Ex. 11.) Kennestone Hospital admitted Mr. Gordon due to his symptoms. Mr. Gordon tested positive for THC (marijuana) and reported to the medical providers that he was "using a new 'person' to get THC." *Id.* A day after his admission, Mr. Gordon also disclosed that he "[d]id take muscle relaxants, also relapsed and used cannabis and had 10 drinks the night before the paranoia came yesterday." *Id.* Although the provider encouraged sobriety, Mr. Gordon indicated he was "not interested in completely stopping right now." *Id.* The medical provider's opinion was that Mr. Gordon's paranoia had an unclear etiology. All diagnostic tests performed were normal.

Upon his sister's recommendation that Mr. Gordon not return to construction work, Mr. Gordon traveled to Wisconsin to see his brother where he began treating with his brother's chiropractor. Although the parties did not submit Mr. Gordon's chiropractic records, Mr. Gordon testified that his chiropractor told him that his "spine was touching his brain," which caused his hallucinations. Upon returning from Wisconsin, Mr. Gordon returned to work light duty at Jake Marshall.

Due to Mr. Gordon's continued complaints to Dr. Callan, he referred Mr. Gordon to see a neurologist. Mr. Gordon selected Dr. Subroto Kundu from a panel and saw him approximately two months later.[1] When Mr. Gordon saw Dr. Kundu, he continued to complain of various symptoms, including that he may have chipped a tooth and had continued vision trouble. Mr. Gordon also told Dr. Kundu about his recent psychiatric hospitalization. Due to Mr. Gordon's numerous complaints, Dr. Kundu ordered a cervical MRI, an EMG/NCV of his upper extremities, and an MRI of his brain.

At Mr. Gordon's next appointment, Dr. Kundu released him from further follow-up. Dr. Kundu noted that all of Mr. Gordon's diagnostic tests were all within acceptable limits. His opinion was that Mr. Gordon had "no residual defect or disability arising out of the context of the work related injury in question and the patient can be recommended to return to his regular duties without restrictions." Dr. Kundu stated that Mr. Gordon should address his vision problems with an optometrist or ophthalmologist and indicated

---

[1] In the interim, Mr. Gordon continued to receive authorized treatment from Dr. Callan.

those problems "cannot be considered to be the result of his work-related injury" since they were "non-industrial in nature."

Mr. Gordon seeks medical benefits and temporary disability benefits for his alleged vision, dental, and mental injuries. He argued Jake Marshall is responsible for damages to his vision, dental work, mileage and payment of bills for unauthorized treatment he sought, and eleven weeks of temporary disability benefits. (Ex. 1.)

Jake Marshall argued Mr. Gordon did not meet his burden of proof in establishing causation of his alleged vision, dental, and mental injuries. It provided Mr. Gordon with authorized medical treatment for his work injury. However, during his authorized treatment, Mr. Gordon chose to seek unauthorized treatment in other states for unrelated conditions. Regarding Mr. Gordon's request for eleven weeks of temporary disability benefits, Jake Marshall pointed out that Mr. Gordon had a full return to work within his restrictions until Dr. Kundu placed him at maximum medical improvement on June 8, 2016. Later, Jake Marshall laid him off on July 28 due to a company-wide lay off. Therefore, Jake Marshall requested that the Court deny Mr. Gordon's request for benefits.

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

The following legal principles apply to this case. Mr. Gordon need not prove every element of his claim by a preponderance of the evidence in order to recover medical and/or temporary disability benefits at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2016). This lesser evidentiary standard does not relieve Mr. Gordon of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an Expedited Hearing, but "allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Sept. 29, 2015).

Mr. Gordon must show, to a reasonable degree of medical certainty, that the incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Further, the causation opinion of Dr. Kundu, the panel physician, "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14) (2016).

The Court holds Mr. Gordon failed to establish that he is likely to prevail at a hearing on the merits that he sustained vision, dental, and mental injuries that arose primarily out of and in the course and scope of his employment. The medical records entered into evidence indicate Mr. Gordon sought unauthorized treatment for non-work-related conditions. Dr. Kundu, the neurologist, specifically stated that Mr. Gordon's vision condition was unrelated to the work injury. None of the medical providers, including the unauthorized providers, provided an opinion indicating the work injury primarily caused his need for treatment regarding his alleged vision, dental, or mental conditions. Likewise, there is no indication from the record that Mr. Gordon missed eleven weeks of work due to his work-related injury.

Accordingly, the Court holds Mr. Gordon is unlikely to prevail at a hearing on the merits in proving he sustained vision, dental, and mental injuries that arose primarily out of and in the course and scope of his employment with Jake Marshall. Therefore, the Court denies his request for medical and temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Gordon's requested relief is denied at this time.

2. This matter is set for a Scheduling Hearing on July 11, 2017, at 10:00 a.m., Eastern Time. You must call 423-634-0164 or toll free at 855-383-0001 to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

   **ENTERED this the 28th day of April, 2017.**

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:

1. Affidavit of Steven Gordon
2. Medical bills (Identification Only)
3. Recorded Statement of Steven Gordon
4. Job Description
5. Wage Statement
6. First Report
7. Two Panels
8. Affidavit of Duncan Dunn
9. Medical records of Nova Medical Center
10. Medical records of Dr. Subroto Kundu
11. Medical records of Kennestone Hospital

Technical record:[2]

1. Petition for Benefit Determination
2. Dispute Certification Notice, including additional defenses
3. Request for Expedited Hearing
4. Notice of Expedited Hearing
5. Employer/Carrier's Response to Employee's Request for Expedited Hearing

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 28th day of April, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------|-----|-------|------------------|
| Steven Gordon, Self-Represented Employee | X | | X | 4111 Tennessee Avenue Chattanooga, TN 37409 smgordon86@gmail.com |
| Jennifer Schmidt, Employer's Attorney | | | X | jcshmid@travelers.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

6